**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN CONKLIN, | : | CIVIL ACTION NO. 1:05-CV-1707 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| WARRINGTON TOWNSHIP, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

This is a § 1983 action, in which plaintiff Stephen Conklin[1] ("Conklin")
alleges that defendants Warrington Township and Warrington Township Zoning
Board (collectively "the Township") violated his rights to due process and equal
protection and retaliated against him for filing the instant lawsuit.  Presently before
the court is the Township's motion for summary judgment (Doc. 54).  The motion
has been fully briefed and is ripe for disposition.  For the reasons that follow, the
motion will be granted and the case will be closed.

I.    **Statement of Facts**[2]

Conklin owns a one-hundred acre farm in Warrington Township.  (Doc. 57,
Ex. A at 19.)  In May of 2003, the Township issued a notice of violation and cease

---

[1]  Plaintiff's deposition testimony revealed that the correct spelling of his first
name is Ste*phe*n, rather than Ste*ven* as it appears in the complaint and caption.
(Doc. 57, Ex. A at 9.)

[2]  In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to plaintiff, the
non-moving party.  See infra Part II.

and desist order alleging that Conklin's property failed to comply with eight provisions of the Township's zoning ordinance.[3] (Doc. 56 ¶ 2; Doc. 71 ¶ 2.)  Conklin appealed the notice and order.  A hearing on his appeal was held before the Township's zoning board on August 19, 2003. (Doc. 56 ¶ 3; Doc. 71 ¶ 3.)  During the hearing, the Township's solicitor allegedly referred to African American children who frequented Conklin's property as "those kids"; however, this statement was omitted from the official transcript of the hearing.  (Doc. 56 ¶ 4; Doc. 71 ¶ 4; see also Doc. 1 ¶ 1.)  Approximately one month after the hearing, the zoning board issued a decision upholding four of the eight ordinance violations.  Conklin appealed the board's decision to the York County Court of Common Pleas and the Pennsylvania Commonwealth Court, both of which affirmed.  (Doc. 56 ¶¶ 5, 7-8, 11; Doc. 71 ¶¶ 5, 7-8, 11.)  Conklin did not file an appeal with the Pennsylvania Supreme Court. (Doc. 56 ¶ 15; Doc. 71 ¶ 15.)

In January or February of 2006, representatives of the York County Conservation District ("YCCD") and a Township zoning officer visited Conklin's

---

[3] The violations included:

a. Operating a campground, outdoor commercial recreational facility, and/or nonprofit recreational area without a special exception;
b. Operating a property with greater than one principal use;
c. Failing to obtain a use certificate or building permit;
d. Failing to complete a land development plan; and
e. Installing a sewage disposal system without a planning module for land development.

(Doc. 32 ¶ 6; Doc. 34 ¶ 6.)

property and requested permission to search for evidence of soil disturbance and/or unlawful timber removal.  Conklin refused, and the YCCD representatives indicated that they intended to return with a search warrant.  (Doc. 57, Ex. L at 67; Ex. P at 199, 203-07.)  A short time later, a Pennsylvania Department of Environmental Protection ("DEP") representative visited Conklin's property and requested permission to search, which Conklin again refused.  The DEP representative then informed Conklin of his intent to return with a search warrant.  (Doc. 57, Ex. P at 199, 210-11.)  Finally, on May 4, 2006, representatives of the YCCD, the DEP, and the Pennsylvania State Police conducted a thirty-five minute search of Conklin's property pursuant to a warrant.  No evidence of soil disturbance or unlawful timbering was found, and no citations were issued.  (Doc. 57, Ex. L at 24; Ex. P at 194, 200, 215-16.)  Conklin acknowledges that there have been no additional visits to or searches of his property since mid-2006.  (Doc. 57, Ex. P at 220.)

On August 19, 2005, Conklin filed the instant action, alleging that the Township had violated his Fourteenth Amendment rights to due process and equal protection by:  (1) enacting an ordinance that was unconstitutionally vague and overbroad, and (2) unconstitutionally applying that ordinance to Conklin's property because of racial animus and economic motivations.  (See Doc. 1 ¶ 1.)[4]  On May 26,

---

[4] Conklin's original complaint also alleged that the zoning board's stenographer, Tracy Lloyd ("Lloyd"), intentionally altered a hearing transcript to delete allegedly racist statements in contravention of Conklin's Sixth, Seventh, and Fourteenth Amendment rights to a fair hearing.  (Doc. 1 ¶¶ 1, 11, 15.)  By order dated May 16, 2006 (Doc. 28), the court dismissed all claims against Lloyd, finding insufficient evidence that she was acting under color of state law.  (See id. at 2-3.)

2006, Conklin filed an amended complaint, claiming that the visits to and search of his property violated his First Amendment right to petition the government for redress of grievances and his Fourth Amendment right to be free from unlawful searches and seizures.  (See Doc. 32 ¶ 1.)[5]  On January 12, 2007, the Township filed the instant motion for summary judgment (Doc. 54), claiming that Conklin had failed to establish a prima facie case of retaliation and that his remaining claims were barred by principles of claim and issue preclusion.  Three months later, Conklin voluntarily agreed to withdraw with prejudice all claims that were based upon the unconstitutional drafting or application of the Township's ordinance.  (See Docs. 85, 87.)  Only the First and Fourth Amendment claims remain.

## II.   **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence,

---

[5]  Conklin's amended complaint includes claims against one "John Doe" defendant.  The court notes that fact discovery in the above-captioned action ended on December 15, 2006 (see Doc. 50), and Conklin has never attempted to amend the complaint to name the real party in interest.  Even if Conklin now sought leave to amend the complaint, such leave would be denied because of undue delay and prejudice to defendants.  See Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) ("While Rule 15(a) [of the Federal Rules of Civil Procedure] provides that leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.").  Accordingly, the court will dismiss all claims against the "John Doe" defendant.

beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v.</u>

<u>City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see</u>

<u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be

adequate, as a matter of law, to sustain a judgment in favor of the non-moving party

on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986);

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see</u>

<u>also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

**III.**   **<u>Discussion</u>**

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law committed by state officials.  <u>See</u>

42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

<u>Id.</u> Section 1983 is not a source of substantive rights, but merely a method for

vindicating violations of other federal laws.  <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273,

284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a

claim under this section, the plaintiff must show a deprivation of a "right secured by

the Constitution and the laws of the United States . . . by a person acting under

5

color of state law." <u>Id.</u> (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d

Cir. 1995)).

Conklin's amended complaint includes two remaining § 1983 claims:

retaliation in violation of the First Amendment and unlawful search and seizure in

violation of the Fourth Amendment.  The court will address these claims *seriatim.*

### A.    <u>First Amendment Retaliation</u>

To state a prima facie case of retaliation, a plaintiff must allege that:  (1) he

or she engaged in an activity protected by the First Amendment, (2) the defendants'

actions were adverse to the plaintiff's interests, and (3) the protected activity was a

"substantial motivating factor" behind the alleged adverse actions.  <u>Hill v. Borough</u>

<u>of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006); <u>see also</u> <u>Baldassare v. New Jersey</u>, 250

F.3d 188, 195 (3d Cir. 2001); <u>Chambers v. Pennsylvania</u>, Civ. A. No. 1:04-CV-0714,

2006 WL 3831377, at *7 (M.D. Pa. Dec. 28, 2006).  A defendant can rebut a prima

facie case of retaliation by showing that "the same adverse action would have taken

place in the absence of the protected conduct."  <u>Chambers</u>, 2006 WL 3831377, at *7;

<u>see also</u> <u>Baldassare</u>, 250 F.3d at 194.  Whether the activity is protected is a question

of law, while the remaining inquiries are questions of fact.  <u>Hill</u>, 455 F.3d at 241.

For purposes of the instant motion, the Township concedes that Conklin

engaged in a protected activity when he filed the above-captioned action and that

the visits to and search of his property could be considered adverse actions.  (<u>See</u>

Doc. 84 at 3-4.)  However, the Township argues that Conklin has failed to proffer

any evidence that the filing of his complaint was a substantial motivating factor

6

behind the alleged retaliation.  (Id. at 4.)  To establish the causation element of a

retaliation claim, a plaintiff must prove that the exercise of his First Amendment

rights "played some substantial role" in motivating the adverse action.  Meenan v.

Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D. Pa. Apr. 13, 2006);

see also Suppan v. Dadonna, 203 F.3d 228, 236-37 (3d Cir. 2000).  The temporal

proximity of an adverse action to a plaintiff's exercise of his First Amendment rights

is probative of the causation element of a retaliation claim.  Estate of Smith v.

Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  However, a protected activity and an

adverse action must be "very close" in time to prove causation.  See Clark County

Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (stating that three month period

between protected activity and adverse action did not suggest causation).

   In the action *sub judice*, Conklin's August 2005 complaint was followed by

visits to his property in February of 2006 and a search of his property in May of

2006.  Hence, the difference in time between Conklin's protected activity and the

adverse actions that followed is six months and nine months, respectively.  The

court finds that the temporal proximity between Conklin's protected activity and

the adverse actions that followed is not so unduly suggestive as to give rise to an

inference of causation.  See id. at 273-74; see also Smith v. ABF Freight Sys., Inc.,

No. 04-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007).

   Moreover, Conklin has proffered no other evidence sufficient to suggest a

causal nexus between his protected activity and the adverse actions that followed.

The evidence of record suggests that the visits to and the search of Conklin's

7

property were prompted by anonymous complaints, the source of which DEP refused to reveal.  (See, e.g., Doc. 57, Ex. M at 137.)  It is apparent that Conklin subjectively believes that the complaints were initiated by the Township as part of a continuing pattern of harassment; however, to support this supposition, Conklin offers only the fact that a Township zoning officer was present during one of the visits to his property.  Conklin concedes that he has no "tangible documents, evidence, [or] witness statements" to support his hypothesis that the Township was the source of the anonymous complaints.  (Doc. 57, Ex. P at 225-26.)  Based upon the foregoing, the court finds that Conklin has failed to establish that his filing of the complaint in the above-captioned action was a substantial factor in prompting the visits and the search that followed.  Accordingly, the court will grant the Township's motion for summary judgment with respect to Conklin's retaliation claims.

### B.    Fourth Amendment Unlawful Search and Seizure

Fourth Amendment unlawful search and seizure claims require proof of an unconstitutional invasion of a plaintiff's "reasonable expectation of privacy" or a deprivation of his or her interest in property.  See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992); Rakas v. Illinois, 439 U.S. 128, 133-35 (1978) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)).  Assuming arguendo that Conklin could establish that such a deprivation occurred, his Fourth Amendment claims would nevertheless fail because he has not proffered any evidence to suggest that the Township was personally involved in the allegedly unlawful search of his property.  To the contrary, Conklin admits that no one from the Township was present during

8

the search and that the search was conducted by representatives of the DEP,

YCCD, and State Police.  (Doc. 57, Ex. P at 215-26); <u>see also</u> <u>Evancho v. Fisher</u>, 423

F.3d 347, 353 (3d Cir. 2005) (stating that a "defendant in a civil rights action must

have personal involvement in the alleged wrongdoing").  Therefore, the court will

grant summary judgment in favor of the Township on Conklin's Fourth

Amendment claims.

**IV.    <u>Conclusion</u>**

      For the foregoing reasons, the court will grant the motion for summary

judgment (Doc. 54) with respect to Conklin's First and Fourth Amendment claims

and will close this case.

      An appropriate order will issue.


                      <u>S/ Christopher C. Conner</u>
                      CHRISTOPHER C. CONNER
                      United States District Judge


Dated:       November 30, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN CONKLIN,** | : | **CIVIL ACTION NO. 1:05-CV-1707** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARRINGTON TOWNSHIP**, et al., | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 30th day of November, 2007, upon consideration of the

motion for summary judgment (Doc. 54), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 54) for summary judgment is GRANTED. <u>See</u> FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants Warrington Township and Warrington Township Zoning Board and against plaintiff on all claims.

3. Plaintiff's claims against defendant John Doe are DISMISSED.

4. The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge